### BURKE v. SONCRANT et al.
### No. 5863.

Court of Appeal of Louisiana.
Second Circuit.

March 31, 1939.

Gist & Thornton, of Alexandria, for appellants.

Russell E. Gahagan, of Natchitoches, for appellee.

HAMITER, Judge.

Plaintiff, a manual laborer, entered the employ of one C. E. Soncrant about February 1, 1937. The latter possessed a contract with the Roy O. Martin Lumber Company for the cutting, hauling and loading of logs from timber owned by it and located in Natchitoches Parish, Louisiana. He teamed and worked with one Frank Smith in the cutting of the logs, and they received an agreed price for each thousand feet cut. This employment was followed until March 13, 1937, on which date he claims to have sustained an injury through an accident that occurred while engaged in the performance of his work.

Subsequently, he instituted this suit against the said C. E. Soncrant and Roy O. Martin Lumber Company to recover under the provisions of the Louisiana Employers' Liability Act. Act No. 20 of 1914. His petition recites that,— " * * * while he was working as aforesaid and while at work and while performing services arising out of and incidental to his employment he was struck in his right side by a falling limb and as a consequence was ruptured and is now totally and permanently disabled from performing any work whatsoever. That he has a hernia in his right side caused by said accidental injuries and which renders your petitioner totally and permanently disabled to do manual labor; that your petitioner is a man of little education and fitted to perform only manual labor."

The prayer is for an award of compensation as for total and permanent disability.

Defendants answered, denying both the claimed accident and injury. They aver on information and belief that the claim is fraudulent and fictitious.

A judgment was rendered in plaintiff's favor condemning defendants in solido to pay unto him the sum of $5.20 per week for a period not to exceed 400 weeks, beginning March 13, 1937. The parties cast appealed.

It is uncontroverted that plaintiff is presently enduring a complete direct right inguinal hernia. The record presents only the question of whether or not that condition resulted from a trauma occurring while he was engaged in the performance of his duties as an employee of defendant Soncrant. This is purely an issue of fact and necessarily the decision of the trial court will not be disturbed unless it appears that he has committed manifest error.

According to the testimony of plaintiff, he and his partner, Frank Smith, were working together in the woods on Saturday, March 13, 1937. Late in the afternoon of that day, after they had cut down a large tree, a limb struck him in the right side. They waited a few minutes and then began sawing the fallen tree. When this task was almost finished the saw jammed and plaintiff "snatched the saw and when I snatched it why my right side started to burning and itching and I got very sick at my stomach, and I went up on the hill and laid down". He lay there for 25 or 30 minutes, and then walked to his home. Pain was experienced during the trip. The following morning his side "seemed to be easier", and he set out with his partner to cut some bill logs. After walking a portion of the distance to the place of operations he was compelled to lie down. There he noticed a small knot or hernia in his right groin. Shortly thereafter he returned to his home. On Monday morning the hernia was about the size of a goose egg and he requested that Dr. Reed visit him.

Frank Smith, who was the logging teammate of plaintiff and a witness in his behalf at the trial, did not see the limb strike plaintiff. A distance of 16 or 18 feet separated them at the time and his face was turned in the opposite direction. However, he heard the noise that resulted. The limb was one that had been hanging loosely in a pine sapling and became dislodged when the falling tree struck it. Plaintiff complained to him of being hurt in the side, and they cut down no more trees. "We cut the log we was working on, and

the saw pinched and we could not pull it, and I drove a wedge in it and when it bucked off he jerked at the saw, and I said something to him about let's go ahead and cut it and if we are not let's go home. And he said, I am ready to go, and I took the saw and put it in the treetop, and he walked up on the hill and he was laying down sideways like that." While walking together to their respective homes, claimant continuously lagged behind. This was the last occasion of their sawing logs together. On Sunday morning the two started to work but plaintiff could not continue. "He told me he believed he was ruptured." Smith visited his partner's home on Monday morning and found him in bed. "He was pretty bad ruptured the best I could tell."

Dr. Reed, who was offered as a witness for the defense, made an examination of plaintiff on the mentioned Monday morning and found the hernia existing. Plaintiff told him at the time that the limb "hit him above the hip on the soft spot above the hip bone." The referred to locality was examined, but no evidence of a blow was detected.

It is contended by defendants that plaintiff's hernia was not obtained while working for Mr. Soncrant, as claimed, but that it is one of long duration. In support of this they produced the testimony of an array of witnesses. Some of these persons stated that prior to the occurrence of the claimed accident plaintiff informed them of the existence of a hernia on his right side, while others testified that they observed it at times when he was nude. A swimming companion during the year of 1922 or 1923, claims to have then noticed it. On the other hand, approximately an equal number of witnesses was called by plaintiff in aid of the success of his demands. These saw him in an undressed condition on numerous occasions before March 13, 1937, and the affliction that he now has was not then present. An analysis of the testimony of each of the herein mentioned witnesses will be of no benefit to any one and we shall not attempt it in this opinion.

A denial is made by plaintiff of the statements assertedly made by him regarding his having a hernia prior to entering the employ of defendant Soncrant. Also, he explains that he has suffered for many years from large kernels in his groins, and that perhaps defendants' witnesses erroneously concluded that one of these was a hernia. A kernel of the kind that he had is in no manner connected with or related to a hernia. Then, too, he points out that his brother, Hoke Burke, is and has been for a long period of time ruptured on the right side, and that some persons may have confused the two.

The medical proof in the record is likewise conflicting. Some of the physicians were of the belief that the limb's striking of plaintiff in his side, above the right hip, could not have caused the injury; and that if he had been so struck, evidence of the blow in the form of a bruise or abrasion would have existed. In this connection it is to be recalled that Dr. Reed found no such evidence. Other members of the medical profession opined that a blow to the soft tissues of plaintiff's side, as he claimed occurred, would not necessarily leave any sign thereof, and that the striking could have caused the existing hernia.

Plaintiff is a man of no education whatever, and has been compelled to perform hard manual labor for his subsistence. His efforts prior to the time that he ceased work were devoted to cutting and sawing logs, shoveling cotton seed with large scoops, cutting fence posts and building fences, oil field work, and other labor of like character. This was well performed and he at no time wore a truss. According to the expert testimony, a person suffering a hernia of the type and severity that plaintiff endures, should not and cannot usually engage in strenuous labor of the kind described. In view of this proof, and after thoroughly considering all of the other evidence in the record, we are unable to hold, as defendants would have us do, that the trial judge has manifestly erred in his findings of fact and his decision.

█ The fact that plaintiff engaged in sawing the fallen tree for a few minutes after the limb struck him does not weigh against his claim. Baker v. Wall Drilling Co. et al., 10 La.App. 397, 123 So. 198; Miller v. Frank Grocery Co., Inc., 17 La. App. 333, 136 So. 143.

The judgment is affirmed.